UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Sonia Filby, et al.,                                                    Case No. 3:13-cv-1582-JJH

        Plaintiff

  v.                                                        MEMORANDUM OPINION
                                                                 AND ORDER

Windsor Mold USA, Inc.,

        Defendant

       Plaintiffs bring this Fair Labor Standards Act collective action and state law class action against Defendant Windsor Mold USA, Inc, alleging underpayment of wages to employees at Defendant's two Bellevue, Ohio manufacturing plants. Currently pending is Plaintiffs' motion seeking supervision of Defendant's future communications with prospective class members. The motion also seeks to expedite Defendant's production of certain documents related to a settlement agreement reached between Defendant and the U.S. Department of Labor ("DOL").

       For the reasons that follow, Plaintiffs' motion is denied. As more fully detailed below, however, the Court will order Defendant to specifically disclose this action and to distinguish it from the DOL matter in any future DOL-related communications with class members and prospective class members.

**I. Background**

       Plaintiffs claim Defendant failed to pay its Bellevue, Ohio manufacturing facility workers for all hours worked, and Plaintiffs therefore filed the instant FLSA collective action and state law class

action. In addition to this lawsuit, Defendant was subject to a DOL investigation as to its payroll practices. Defendant settled with the DOL, and in conjunction with that settlement delivered payments and standardized "WH-58" DOL release forms, along with explanatory letters, to current and former employees. The recipients of those communications include members and prospective members of the putative class in this case.

The DOL settlement communications sent by Defendant were categorized into four different "Packages." The contents of each Package, and the criteria for determining appropriate recipients, are described in Defendant's brief as follows:

- Package 1 went to individuals who had not opted into this lawsuit and who the DOL determined were eligible to receive a Settlement Payment. This package contained a settlement check in the amount calculated by the DOL; three original copies of the WH-58 Form; and a detailed letter informing the individual of the settlement with the DOL, options regarding the WH-58 Forms and the DOL settlement checks, and that this lawsuit against Defendant was currently pending before this Court. In addition, the letter included clear instructions that the WH-58 Form should be reviewed, understood, and agreed to, and also included clear instructions if the individual decided not to accept the payment or sign the WH-58 Form.

- Package 2 went to individuals who had opted into this lawsuit who the DOL determined eligible to receive a Settlement Payment. This package did not contain a check or a WH-58 Form. Rather, it contained a letter informing the individuals that they were eligible to participate in the DOL settlement, and that their checks and WH-58 Forms had been sent to their counsel. They were further instructed "**please review this letter and the information that was provided to your counsel in regards to this matter and determine if you wish to participate in this settlement**."

- Package 3 went to individuals who had not opted into this lawsuit who were eligible to receive a Catch-Up Payment. This package contained a letter informing these individuals of the DOL settlement and a catch-up check, but no WH-58 Forms.

- Package 4 went to individuals who had opted into this lawsuit and who were eligible to receive a Catch-Up Payment. This package did not contain a check; rather, it contained a letter informing eligible employees that they were eligible to receive a Catch-Up Payment, but their check had been tendered to their counsel.

(Def's. Resp. to Pls.' Mo., Doc. 73 at 3-4) (emphasis in the original) (citations to record and footnotes omitted) (hereinafter, "Def's. Br.").

Plaintiffs claim that the substance and method of Defendant's DOL communications were coercive and may have misled prospective class members into thinking that all claims relating to Defendant's alleged payroll practices have been settled. Accordingly, Plaintiffs filed the instant motion requesting Court supervision of Defendant's future communications with class members and prospective class members.[1] Plaintiffs also seek expedited discovery of the DOL settlement documents in order to determine the accuracy of Defendant's communications. Conversely, Defendant maintains the communications are neither coercive nor misleading, and argues that in any event, the DOL investigation is a matter separate and apart from this lawsuit and the nature of the Defendant's DOL communications is therefore irrelevant. As to production of the DOL settlement documents, Defendant says it is willing to produce the documents according to normal discovery procedure, but is unwilling to expedite production.

## II. Discussion

### A. Plaintiffs' Request for Supervision of Defendant's Communications

Under *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 94-95 (1981), district courts have "both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Id.* at 100.[2] This authority includes the discretion to control communications between parties and prospective class members. *Id.* at 101. A court's

---

[1] Plaintiffs' motion does not seek invalidation of any of the WH-58 waivers that Defendant supposedly secured by coercive or misleading means. Plaintiffs and Defendant both reserve for a later date any argument as to the waivers' validity. Moreover, Plaintiffs do not ask that I require Defendant to issue corrective communications. Plaintiffs' requested relief is expressly limited to supervision of Defendant's future communications.

[2] While *Gulf Oil* dealt with certification of class actions, district courts also use the *Gulf Oil* framework for managing pre-certification communication in collective actions. *See Maddox v. Knowledge Learning Corp.*, 499 F. Supp. 2d 1338, 1342-43 (N.D. Ga. 2007) ("[t]he smattering of lower courts to have addressed the issue [of pre-certification communications in collective actions] have taken a similar approach to that outlined in *Gulf Oil*: relying upon their broad case management discretion to generally allow pre-notice communications while actively limiting misleading statements in such communications.").

discretion, however, is not unlimited. *Id.* at 100. An order limiting communications "should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* at 101. Further, such orders should be "carefully drawn," such that they "limit[] speech as little as possible, consistent with the rights of the parties under the circumstances." *Id.* at 102.

Upon weighing the relevant considerations and examining the particular circumstances in this case, I find that some of Defendant's communications were misleading and therefore require a certain level of control. Specifically, certain of the communications were misleading because they could potentially have caused recipients to conflate the DOL settlement with the instant lawsuit.

Defendant contends there was no potential for confusion, arguing that "the record is clear that Defendant informed all employees affected by the DOL settlement of this pending lawsuit." (Def's. Br. at 13). This assertion is correct as to Package 1, wherein the explanatory letter contains a standalone paragraph explaining that:

> There is a separate federal collective action lawsuit against Windsor alleging failure to make proper payment of wages currently pending in the Northern District of Ohio styled *Sonia Filby et al. v. Windsor Mold USA, Inc.*, Case No. 3:13-cv-01582 (the "federal lawsuit"). If you choose to join the federal lawsuit, please note that your signing the enclosed release and/or accepting the tendered check will impact your rights and ability to recover additional compensation under the Fair Labor Standards Act and other laws at issue in that suit.

(Package 1 Ltr., Doc. 73-2 at 2). Defendant is correct that this statement clearly identifies this case and distinguishes it from the DOL investigation such that the two could not reasonably be conflated.

As to Package 2, Defendant is correct that the letter informed recipients of the pendency of this action. Yet, while the letter enumerates this action and acknowledges the recipient has opted-in, the letter immediately goes on to state "[t]he [DOL] has conducted an investigation into [Windsor Mold's] payroll practices and has made findings relevant to your employment . . . . After its

investigation under the [FLSA], the DOL has determined that former [employees] are eligible to receive a payment of wages . . . . The DOL calculated the wages and other compensation due, approved the amounts being paid by Windsor to current and former eligible employees and has supervised this settlement." (Package 2 Ltr., Doc. 73-3 at 2). Nothing in the letter enables a recipient to distinguish this lawsuit from the DOL investigation. To the contrary, the letter could reasonably be read to suggest the DOL settlement payments actually resolve this lawsuit. Such a suggestion is misleading.

I find that Package 3 and Package 4 are also misleading. As with Package 2, Packages 3 and 4 can be read to suggest that the DOL settlement payments resolve this lawsuit. This confusion is compounded by the fact that neither Package 3 nor Package 4 makes any mention of this lawsuit, (*see* Package 3, Doc. 73-4; Package 4, Doc. 73-5), despite Defendant's overt declaration that "Defendant informed all employees affected by the DOL settlement of this pending lawsuit." (Def's. Br. at 13). Defendant passingly admits in a footnote that "[Package 3] did not inform the individuals of the instant suit because the statute of limitations of the proposed class suit does not extend to the catch-up period . . . ." (Def's. Br. at 4 n.6). Even assuming this to be true, and even assuming this reasoning applies to Package 4,[3] both Packages were sent to individuals who either have opted-in or may later opt-in to this lawsuit. As such, the possibility that the Packages can be read to suggest that the DOL settlement resolves this lawsuit makes them misleading.

While Packages 2, 3, and 4 are misleading, I will not require pre-approval of all of Defendant's communications. I find that such a remedy is too restrictive under the circumstances. *See Gulf Oil*, 452 U.S. at 102 (district court order must be carefully drawn, limit speech as little as possible, and give explicit consideration to the narrowest possible relief); *id.* at 102-103 (characterizing district court's pre-approval requirement as a "sweeping restraint order" unjustified

---

[3] Plaintiffs dispute what constitutes the appropriate statute of limitations. Defendant does not explain Package 4's silence as to this lawsuit.

5

by a "particularized weighing of the circumstances of the case . . . ."). Instead, I will require that for any of Defendant's communications that involve the DOL matter and are made to any member or prospective member of the putative class in this case, Defendant shall include a standalone statement that enumerates the existence of this lawsuit, unambiguously states that this lawsuit is separate from the DOL matter, and informs the recipient whether any action they take in response to the communication will impact their rights in the instant lawsuit. The above-described statement from Package 1 is a suitable model for complying with this Order.

**B. Plaintiffs' Request to Expedite Discovery of DOL Settlement Documents**

Plaintiffs seek expedited discovery of a laundry list of documents related to the DOL settlement agreement. Defendant is willing to produce the documents as appropriate during the normal course of discovery, but is unwilling to expedite production.

I will not require expedited production. Though I agree the documents may ultimately be relevant in this case Plaintiffs have made no showing as to why they must be produced now. Plaintiffs claim they need the documents because "they are relevant to the quality and accuracy of the information provided to the employees accompanying the DOL payments." (Pls.' Mo., Doc. 70 at 12). Maybe so, but the DOL settlement is a matter separate and apart from the instant litigation and is one for which I am not responsible for policing. As such, I need only be concerned with the quality and accuracy of information provided to DOL payment recipients to the extent it threatens to mislead them in the instant litigation. I have addressed Plaintiffs' concerns in that regard as described above, and I therefore see no need to force expedited discovery of the DOL settlement documents.

**III. Conclusion**

For the reasons stated herein, Plaintiffs' motion for supervision of Defendant's communications and for expedited discovery is denied. (Doc. 70).

6

I hereby order, however, that for any of Defendant's communications involving the DOL matter and are made to any member or prospective member of the putative class in this case, Defendant shall include a standalone statement that enumerates the existence of this lawsuit, unambiguously states that this lawsuit is separate from the DOL matter, and informs the recipient whether any action they take in response to the communication will impact their rights in the instant lawsuit.

So Ordered.

s/ Jeffrey J. Helmick  
United States District Judge