IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Sonia Filby, *et al.* | : | Case No.:  3:13-CV-01582-JJH |
| Plaintiffs, | : | Judge Jeffrey J. Helmick |
| v. | : | **<u>FINAL APPROVAL ORDER</u>** |
| Windsor Mold USA, Inc. | : | |
| Defendant. | : | |

This matter comes before the Court for consideration of the parties' Joint Motion for Final Approval of Class Action Settlement.  (Doc. No. 132).  The parties request that the Court grant final approval of a confidential settlement pursuant to Fed.R.Civ.P. 23(e).  On March 11, 2015, this Court granted preliminary approval to a proposed class action settlement as the first step of the approval process under Fed.R.Civ.P 23(e).  (Doc. No. 128).  The Court directed that notice be provided to class members and scheduled a final fairness hearing for August 20, 2015.

Upon consideration of the parties' joint motion for approval and the evidence and argument presented in open court during the final fairness hearing, the Court finds that reasonable notice has been supplied to all class members and that the proposed settlement is fair, reasonable and adequate.  As a result, the parties' joint motion is granted for the reasons set forth below.

## <u>LITIGATION BACKGROUND</u>

Defendant Windsor Mold operates two plants in Bellevue, Ohio that manufacturer plastic molding components for the automotive industry: Precision Automotive Plastics and Autoplas.

1

On July 22, 2013, Plaintiffs Filby and Edwards filed this lawsuit on behalf of themselves and all other similarly situated "press operators" and "decorators" ("Covered Positions") to recover overtime pay they alleged Defendant withheld in violation of the FLSA, the Ohio Wage Act, the Ohio Prompt Pay Act and for other pay-related issues under Ohio common law.  (Doc. No. 1). Specifically, Plaintiffs contend that Defendant did not pay workers for a daily twenty-minute meeting or twenty-minute meal break, or both. Plaintiffs contend that those employed in Covered Positions must be compensated for both periods under the FLSA, as well as Ohio statutory and common law, including Defendant's stated policy of providing a "paid" lunch period. Plaintiffs requested overtime and liquidated damages pursuant to federal and state overtime laws; for statutory penalties under the Ohio Prompt Pay Act; and for compensatory, contract, punitive, and other damages under Ohio common law for breach of contract, promissory estoppel, and unjust enrichment.

In its Answer, Defendant averred that it properly paid all press operators and decorators for attending the twenty minute pre-shift meeting and for their twenty-minute meal break, and further contended its employees were provided a bona fide meal period. (Doc. No.# 4, 51).

From the outset, this litigation has concerned both collective "opt-in" allegations under the FLSA at 29 U.S.C. § 216(b) and class-action "opt-out" allegations under Fed.R.Civ.P. 23 alleging violations of Ohio statutory and common law. The statute of limitations for a violation of the FLSA is two years from the date an individual "opts-in" to the suit; three years if the violation is "willful."  29 U.S.C. § 255(a). The statute of limitations for a violation of the Ohio Wage Act is two years from the date the claim accrues. Ohio Rev. Code § 2305.11.

Three of Plaintiffs' common law claims involve statutes of limitations of six years: breach of an unwritten contract, promissory estoppel, and unjust enrichment. Ohio Rev. Code §§ 2305.06; 2305.07.

If Plaintiffs were to prevail on all claims asserted in the complaint, class members would be entitled to wages and other damages accrued during shifts as long as six years prior to the filing of the complaint in this case, depending on when an individual began working at Windsor.

As further detailed in the Settlement Agreement, Defendant has already provided a significant portion of the relief sought in the Amended Complaint through prior payments to current and former employees in Covered Positions. (Doc. No. 121-1 at § 2), Specifically, in December 2013 and April 2014, Defendant made payments to current and former employees in Covered Positions constituting the regular and overtime wages owed for twenty minutes for each shift worked between July 22, 2010 and December 31, 2013.  (*Id*.). The December 16, 2013 payments compensated each individual for twenty minutes each day worked and came in two forms: (1) for back overtime from August 26, 2011 through August 26, 2013, as determined by the United States Department of Labor ("DOL"); and (2) as a "catch-up" payment for back overtime from August 27, 2013 through December 31, 2013. (*Id*.).  See also: Memorandum and Opinion concerning Plaintiffs' Motion for Court Supervision of Windsor's Communications with Class Members (Doc. No. 82).

The April 2014 payment compensated current and former employees in Covered Positions for twenty minutes each day covering the time period of July 22, 2010 through December 31, 2013 at the elevated overtime rate.  The April 2014 payments were not directly related to any DOL investigation.

On October 21, 2014, the parties submitted a proposed settlement agreement covering both the FLSA "opt-in" claims and the Fed.R.Civ.P 23 "opt-out" claims.  (Doc. No. 111).  The parties discussed the proposed settlement with the Court at an in-chambers status conference on October 29, 2014.  At the Court's suggestion, Plaintiffs and Windsor agreed to modify the settlement documents with the goal of clarifying a handful of terms and improving the readability of information supplied to potential class members.  The parties submitted their revised draft of the proposed settlement documents on December 10, 2014.  (Doc. No. 121).  The revisions primarily affected the notice provided to class members describing the settlement. (Doc. No. 121-2).

The Court approved the FLSA "opt-in" portion of the settlement and preliminarily approved the Rule 23 "opt-out" portion on March 11, 2015, as well as the proposed notice procedure.  (Doc. No. 128, 129).

## SUMMARY OF SETTLEMENT TERMS AND NOTICE PROCESS

Windsor has agreed to deposit confidential sum into a Qualified Settlement Fund.  Class Counsel has petitioned for an award of costs and attorney's fees in the amount of $218,500 to be paid out of the Qualified Fund.  (Doc. No. 134).  Pursuant to the proposed settlement, each class member submitting a claim will receive a pro-rata share of the remaining fund calculated based on the number of shifts worked during the six years prior to the filing of this action.

According to Windsor, acting as Settlement Administrator, notice packets were sent to 1,062 current and former employees.  (Doc. No. 135 at ¶ 5).  A total of 584 individuals submitted valid claims, representing 83.66 percent of the total shifts worked during the six-year class period.  (*Id.* at ¶ 14).  If the Court approves Class Counsel's fee petition in its entirety, each shift worked will be valued at approximately $0.91.  (Doc. No. 132 at p. 7).  Depending on the

4

number of shifts worked, individual class members will receive between $0.91 and $2,150.37. (*Id.*).

## FINAL CERTIFICATION OF THE SETTLEMENT CLASS

The parties Joint Motion requests the Court finally certify a "settlement class" pursuant to Fed.R.Civ.P. 23 consisting of "All current and former employees employed by Defendant as Plant Operators (a/k/a 'Press Operators') and Decorators (a/k/a 'Painters') at one or both of Defendant's Bellevue, Ohio facilities, Precision Automotive Plastics and Autoplas between July 22, 2007 and December 31, 2013."

As part of its preliminary approval order, the Court granted preliminary certification of this class. (Doc. No. 128). Since that order, the parties have executed the notice plan without significant difficulty and have not encountered problems with the management of the notice process. No class member has objected to certification or any other aspect of the Settlement Agreement.

All of the express requirements of Fed.R.Civ.P. 23(a) are met and the class is maintainable under Fed.R.Civ.P. 23(b)(3) because common issues of fact and law predominate over individual issues and a class action is a superior method of resolving the litigation.

According to Windsor's payroll records, a total of 1,066 individuals worked in Covered Positions at the Defendant's two Bellevue facilities during the Covered Period. These numbers satisfy the numerosity requirement of Fed.R.Civ.P. 23(a)(1). *Routa v. West Customer Mgmt. Group, LLC,* 4:09cv1608, 2010 U.S.Dist. LEXIS 58912 at **7-8 (June 15, 2010) (finding that 1,800 class members satisfy the numerosity requirement in an FLSA case).

As the parties stipulate (based on documents produced by Defendant in this case and affidavits from class members filed in support of their motion for conditional certification (Doc.

No.66), support, proposed class meets the commonality, typicality, and adequacy requirements of Fed.R.Civ.P. 23(a)(2)-(4). The Class Members attended the same pre-shift meetings and had the same amount of time for their meal breaks. The Named Plaintiffs assert the same claims for relief as may be asserted by all absent class members. All are based on an essentially identical common factual allegation: They worked twenty minutes per shift and were not paid. Moreover, the DOL payment process indicates: (1) Class Members can be reliably identified and issued checks based upon Defendant's payroll records; (2) the DOL concluded that press operators and decorators are sufficiently similarly situated to participate in the same payment scheme.

Similarly, the predominance and superiority factors of Fed.R.Civ.P. 23(b)(3) are satisfied. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007), quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 632 (1997). To satisfy the predominance requirement in Rule 23(b)(3) "a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole,…predominate over those issues that are subject only to individualized proof." *Id.* (internal quotations omitted). Here, inquiry into Defendant's payroll practices, policies for breaks, and pre-shift meetings and compensation policies present significant class wide issues. *See Kritzer v. Safelite Solutions, LLC,* S.D. Ohio No. 2:10cv729, 2012 U.S.Dist. LEXIS 74994 at **11-12 (May 30, 2012) (noting that common questions regarding a company's policies and practices for shutting down and booting up computers before and after shifts support class certification in an FLSA case); *Rotuna*, 2010 U.S. Dist. LEXIS 58912 at **7-11 (same).

In considering whether the superiority requirement of Rule 23(b)(3) is satisfied, courts consider "the difficulties likely to be encountered in the management of a class action." *Young v.*

6

*Nationwide Mut. Ins. Co*., 693 F.3d 532, 545 (6th Cir. 2012), citing *Beattie*, 511 F.3d at 567.

"Where it is not economically feasible to obtain relief within the traditional framework of a

multiplicity of small individual suits for damages, aggrieved persons may be without any

effective redress unless they may employ the class-action device." *Id*., citing *Deposit Guar. Nat'l

Bank v. Roper*, 445 U.S. 326, 339 (1980). Moreover, manageability concerns are reduced where

the parties seek to administer a settlement process instead of full-scale litigation. Depending on

their length of employment as a press operator or decorator, each Class Member could expect to

recover approximately twenty dollars to a few thousand dollars in back wages and overtime

should he or she prevail in an individual lawsuit. In light of the relatively modest sum a Class

Member could expect to recover an individual lawsuit, class-wide settlement is superior.

The proposed settlement class meets the requirements of Fed.R.Civ.P. 23 for settlement

purposes.  The settlement class will be certified so the settlement can be approved and proceeds

distributed.

## **FINAL APPROVAL OF THE SETTLEMENT**

The Court must also finally approve the proposed settlement as "fair, reasonable and

adequate" pursuant to Fed.R.Civ.P. 23(e).  To evaluate the fairness of a proposed settlement, the

Sixth Circuit directs the Court to consider seven factors: "(1) the risk of fraud or collusion; (2)

the complexity, expense and likely duration of the litigation; (3) the amount of discovery

engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class

counsel and class representatives; (6) the reaction of absent class members; and (7) the public

interest." *Vassalle v. Midland Funding, LLC*, 708 F.3d 747, 754 (6th Cir. 2013).

When reviewing a proposed settlement, a district court has "wide discretion in assessing

the weight and applicability" of the relevant factors.  *Id.* at 754-55.  A court "cannot judge the

fairness of a proposed compromise without weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007), quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).

Each of the seven factors for evaluating a class settlement will be considered in turn.

### 1. <u>Risk of fraud or collusion</u>

The proposed settlement was reached only after a respected independent mediator conducted a two-day mediation in the summer of 2014. "The participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties." *Hainey v. Parrot*, 617 F.Supp.2d 668, 673 (S.D. Ohio 2007).

The Court is also directly familiar with the contentious nature of the early stages of this litigation, particularly the disagreement between the parties over the circumstances surrounding the December 2013 payments to class members in conjunction with a parallel DOL investigation. Both parties and their counsel have consistently sought to zealously represent their clients throughout this case. Procedurally, the proposed Settlement Agreement is the result of contested litigation and arms-length negotiation.

### 2. <u>The complexity, expense and likely duration of the litigation</u>

In the absence of settlement, continued litigation of this class action overtime case will likely be costly and uncertain. Several depositions of both Plaintiffs and various Windsor employees lay ahead. Both parties would likely be required to obtain costly experts to offer opinions about Windsor's employment practices and payroll records. In addition, the Court would be required to rule on: the pending motion for conditional certification under the FLSA

(Doc. No. 66); a contested motion for class certification under Fed.R.Civ.P. 23; and one or more motions for summary judgment.  Assuming typical progress, the parties estimate that a trial may be as many as 18 months away if the proposed settlement is not approved.  If one of the parties files an appeal, the remaining lifespan of the litigation will likely be measured in years.

Thus, the settlement averts the uncertainty and delay inherent in extensive motion practice, a trial and the possibility of multiple appeals.  "[A]voiding the delay, risks, and costs of continued litigation against a defendant is a valid reason for counsel to recommend and for the court to approve a settlement." *In re Nationwide Fin. Servs. Litig.*, S.D. Ohio No. 2:08cv249, 2009 U.S. Dist. LEXIS 126962 at *10 (Aug. 18, 2009), citing *Ayers v. Haley Barbour, et al*, 358 F.3d 356, 369 (5th Cir. 2004) ("settling now avoids the risks and burdens of potentially protracted litigation").

### 3. The amount of discovery engaged in by the parties

To ensure that Plaintiffs have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed settlement, the stage of the proceedings and the discovery taken must be considered.  See: *In re Telectronics Pacing Sys.*, 137 F.Supp.2d 985, 1015 (S.D. Ohio 2001).  A settlement proposed after the litigants had the opportunity to thoroughly vet their case through discovery and motion practice more likely warrants approval than one in which the parties are merely speculating on the likely outcome.

This case was pending for over a year when the proposed settlement was reached.  The record reflects that the parties engaged in sufficient paper discovery and motion practice to obtain a reasonable understanding of the merits of this case.

### 4. The likelihood of success on the merits

9

Weighed against the risks inherent in continued litigation, the fund made available to class members is attractive.  "The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured."  *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2010), citing *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984).

Here the risks to class members of continued litigation are significant.  Windsor has already paid a significant portion of the damages originally sought in the Complaint, including twenty minutes for each shift worked from July 22, 2010 to December 31, 2013.

Following these payments, two significant claims asserted in this action remain. First, Defendant has not paid litigation costs, attorneys' fees, and "liquated damages," equal to the unpaid overtime compensation owed pursuant to the FLSA at 28 U.S.C. § 216(b). However, many current and former employees in Covered Positions accepted checks or executed Department of Labor Form WH-58 waivers or both. As a result, Defendant contends these individuals waived their right to liquated damages under the FLSA.  The parties dispute whether the circumstances surrounding the December 2013 DOL payments resulted in an informed and meaningful waiver; however, it is undisputed that liquated damages under the FLSA would not be available to current and former employees in Covered Positions if the Court upholds the validity of the WH-58 waivers. While the ultimate outcome is uncertain, experienced counsel on both sides of this litigation believe there is a significant chance the Court could uphold the waiver. As a result, additional relief under the FLSA for Class Members is uncertain.

Second, Defendant has also not made any payments for the period predating July 22, 2010. If Plaintiffs prevail on both class certification under Rule 23 and on the merits, current and

former employees in Covered Positions could potentially recover back wages for a period between July 22, 2007 and July 22, 2010. Defendant believes the Court would not certify this group as a class action under Rule 23 given significant issues regarding numerosity, common questions of law, and typicality, among others.

For these reasons, the claims remaining after Windsor's prior payments may represent a more challenging recovery for class members. When considered against uncertain success, the proposed settlement is an appealing alternative. *Kritzer*, 2012 U.S.Dist. LEXIS 74994 at **20-21.

### **5. The opinions of class counsel and class representatives**

Class Counsel strongly recommends approval of the Settlement Agreement. The view of experienced counsel favoring the settlement is entitled to great weight. *In re Nationwide Fin. Servs. Litig.,* 2009 U.S. Dist. LEXIS 126962 at **14-15. The Court should generally "defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs." *Id.,* quoting *Williams v. Vukovich,* 720 F.2d at 922-23. When, as here, the proposed settlement is reached after the case has been pending for some time and significant discovery is substantially complete, the deference traditionally afforded Class Counsel's judgment is increased. *In re Broadwing, Inc. ERISA Litig.,* 252 F.R.D. 369, 375 (S.D. Ohio 2006) ("Significantly, however, the deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered.")

Here, after over two years of litigation and evaluating many of the risks and delays outlined herein, Class Counsel strongly recommends the settlement. As a result, this factor strongly points toward approving the settlement.

### **6. The reaction of absent class members**

Notice was mailed to 1,062 class members and none objected. Only five opted-out.

The lack of objection is powerful evidence of the fairness of a proposed settlement. *In re Nationwide Fin. Servs. Litig.*, 2009 U.S. Dist. LEXIS 126962 at *20, citing *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001) ("[A] relatively small number of class members who object is an indication of a settlement's fairness.")

### 7. The public interest

The class members' response to the proposed settlement indicates that they favor approval.

As a general matter, there is a strong public interest in promoting the settlement of disputes in general and of class actions in particular. *Connectivity Sys. Inc. v. National Nat'l City Bank*, S.D. Ohio No. 2:08cv1119, 2011 U.S. Dist. LEXIS 7829 at *19 (Jan. 26, 2011), citing *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Here, the proposed settlement "ends potentially long and protracted litigation and frees the Court's valuable judicial resources." *Id.* (citations omitted).

The public interest favors approval of the proposed settlement.

### 8. Settlement is Not An Admission of Fault or Guilt By The Defendant

The settlement agreement is not an admission by Defendant, nor is this Order and Final Judgment a finding of the validity of any claims in the class action or of any wrongdoing by the Defendant. Furthermore, the settlement agreement is not a concession by Defendant and shall not be used as an admission of any fault, omission, or wrongdoing by Defendant. Neither this Order and Final Judgment, the settlement agreement, any document referred to herein, any exhibit to any document referred to herein, any action taken to carry out the settlement agreement, nor any negotiations or proceedings related to the settlement agreement are to be

construed as or deemed to be evidence of, or an admission or concession with regard to, the

denial or defenses of Defendant, and shall not be offered in evidence in any action or proceeding

against the parties hereto, other than to enforce the provisions of this Order and Final Judgment.

This Final Order and Judgment, and any other papers and records or files in this class action may

be filed in this Court or in any other litigation as evidence of the settlement by Defendant to

support a defense of res judicata, collateral estoppel, release, or other theory of claim or issue

preclusion or similar defense as to the settled claims.

## <u>CONCLUSION</u>

For the forgoing reasons, the parties' Joint Motion for Final Approval (Doc. No. 132) is

Granted with the following orders:

1) The definitions and terms set forth in the Settlement Agreement (Doc. No.121-1) are

hereby adopted and incorporated into this Order.

2) The Settlement Class as defined in this order is hereby certified pursuant to

Fed.R.Civ.P. 23(a) and (b)(3).

3) The list of individuals who filed timely opt-out notices contained in Defendant's

Notice of Opt-Out Plaintiffs (Doc. No. 130) is hereby incorporated into this Order.

4) As provided in the Settlement Agreement, this action is DISMISSED on the

merits and WITH PREDJUDICE.  All persons bound by the class action, including named

plaintiffs, opt-in plaintiffs and Rule 23 class members who failed to send either a timely

proof of claim form or request for exclusion form, are hereby deemed to have waived and

released all settled claims and are forever barred from prosecuting against any Released

Parties (as defined by the Settlement Agreement at § 1.32) any of the claims Released by the

Settlement Agreement at § 6.

5)       Without affecting the finality of this judgment and order, the Court retains continuing and exclusive jurisdiction over the parties, including Class Members, to interpret and enforce the terms of the Settlement Agreement and the Court's orders.

So Ordered.

s/Jeffrey J. Helmick_____
United States District Judge